IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02786-MEH

CARL LEADHOLM,

    Plaintiff,

v.

CITY OF COMMERCE CITY, COLORADO,
CHRISTOPHER DICKEY,
JJ ROUANZOIN,
JEREMY JENKINS, and
MICHAEL DIENER,

    Defendants.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

On August 8, 2017, the Court issued an order following review *in camera* of certain medical records Plaintiff had withheld from Defendants pursuant to the physician-patient privilege. Defendants did not challenge application of the privilege but, rather, whether the Plaintiff waived the privilege by inserting his health into the case by seeking recovery for health-related injuries. The Court erroneously (but without objection) applied the physician-patient privilege recognized in Colorado to seven pages of medical records in this case and determined whether they were properly redacted. *See* ECF No. 100.

Now, Defendants seek the Court's review of forty[1] additional pages of medical records redacted by the Plaintiff and ask the Court to compel the Plaintiff to produce unredacted copies of

---

[1]The Court notes that, although there may be forty-one pages contained in the pdf documents submitted to chambers, each set contains twenty-six separate documents and fifteen copies of the same document, Bates-label 000619.

the same. Citing Colorado law, Defendants contend that through both written and oral discovery, the Plaintiff has waived any privilege by placing his mental health at issue in this case as an injury for which he seeks relief. Plaintiff counters that only information not related to this case or to the Plaintiff's injuries has been redacted from the records. Defendants reply that any information suggesting "(i) pre-existing conditions related to claimed conditions, (ii) alternative causes for claimed conditions, and (ii) pre- or postincident events related to claimed conditions" is relevant and discoverable. Reply 2.

At the Court's request, the Plaintiff provided the Court with both redacted and unredacted copies of the challenged records for *in camera* review. To determine whether the records are properly redacted, the Court must consider both the Plaintiff's allegations and the applicable law. The allegations of this case were wholly set forth in my August 8, 2017 order (*see* ECF No. 100) and the applicable legal standards follow.

**Applicable Law**

Rule 26(b)(5) of the Federal Rules of Civil Procedure governs the withholding and production of privileged materials in a federal lawsuit. As pertinent here, Rule 26(b)(5) states:

> (A) *Information Withheld*. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.
>
> (B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve

the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5).

Plaintiff brings two claims in this case pursuant to 42 U.S.C. § 1983: (1) excessive force in violation of the Fourth Amendment; and (2) deliberately indifferent training in violation of the Eighth/Fourteenth Amendments. In federal question cases such as this one,[2] federal privilege law controls, and no physician-patient privilege exists under federal law. *Whalen v. Roe*, 429 U.S. 589, 602 n. 28 (1977) ("The physician-patient ... privilege is unknown to the common law."); *see also* Fed. R. Evid. 501 ("Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.").

However, the Supreme Court established the federal psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996), holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15. Communications must be made in the course of diagnosis and treatment. *Id.* The privilege also protects notes made during the course of treatment. *Dorato v. Smith*, 163 F. Supp. 3d 837, (D. N.M. 2015) (citing *Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 195 (D. Conn. 2009)). Furthermore, the Supreme Court determined, "[l]ike other testimonial privileges, the patient may of course waive the protection," but gave no further explanation as to when such waiver might occur. *See Jaffee*, 518 U.S. at 15 n.14. "Numerous courts since *Jaffee* have concluded that, similar to attorney-client

---

[2] *See* ECF No. 109 at 2.

privilege that can be waived when the client places the attorney's representation at issue, a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue." *Fisher v. S.W. Bell Tele. Co.*, 361 F. App'x 974, 978 (10th Cir. 2010) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)) (holding that a plaintiff who makes a request for emotional distress damages places his psychological state in issue and entitles a defendant to his mental health records).

In the absence of any privilege, a plaintiff's medical records are governed by issues of relevance and confidentiality commonly addressed in civil lawsuits. *See* Fed. R. Civ. P. 26(b) *and* (c). Courts typically construe the scope of discovery broadly; however, a court must "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 26(b)(1) describes the scope of discovery as:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Generally, "[w]hen the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) (citations omitted). However, "when [the] relevancy [of a discovery request] is not

4

readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Id.*

Regarding confidentiality of medical records pursuant to Rule 26(c) (and to the extent these records are not privileged), the Court notes its discussion with the parties at the November 30, 2017 conference at which defense counsel recognized that, although a protective order has been approved orally by the Court, none has been signed and issued. Accordingly, Defendant City of Commerce City agreed to provide the Court with a proposed order for issuance this week. To the extent necessary, the Court finds that such order will be sufficient to address any issues of confidentiality in this matter.

**Analysis**

According to Plaintiff, he "sustained physical and emotional injuries including, but not limited to, a fracture to his left ring finger, bilateral pain to his right and left shoulders, Post Traumatic Stress Disorder ["PTSD"] and Depression." Resp. 2. The records at issue here all contain information from the Plaintiff's visits with a licensed psychotherapist, which the Court finds are facially privileged pursuant to *Jaffee*.

Defendants are concerned primarily with obtaining information regarding Plaintiff's PTSD and cite to different sources concerning "aggregate trauma" and whether it is a facet of PTSD; however, the Court finds it would be helpful to have a general definition of the disorder's symptoms to determine whether the challenged records contain information that has been placed at issue in the case. *See Fisher*, 361 F. App'x at 978. According to the American Psychiatric Association (cited generally by Defendants), PTSD

> is a psychiatric disorder that can occur in people who have experienced or witnessed a traumatic event such as a natural disaster, a serious accident, a terrorist act, war/combat, rape or other violent personal assault.

5

> PTSD has been known by many names in the past, such as "shell shock" during the years of World War I and "combat fatigue" after World War II. But PTSD does not just happen to combat veterans. PTSD can occur in all people, in people of any ethnicity, nationality or culture, and any age. PTSD affects approximately 3.5 percent of U.S. adults, and an estimated one in 11 people will experience PTSD in their lifetime.
>
> ***People with PTSD continue to have intense, disturbing thoughts and feelings related to their experience that last long after the traumatic event has ended. They may relive the event through flashbacks or nightmares; they may feel sadness, fear or anger; and they may feel detached or estranged from other people. People with PTSD may avoid situations or people that remind them of the traumatic event, and they may have strong negative reactions to something as ordinary as a loud noise or an accidental touch***.
>
> A diagnosis of PTSD requires exposure to an upsetting traumatic event. However, exposure could be indirect rather than first hand. For example, PTSD could occur in an individual who learns that a close family member or friend has died accidentally or violently.

American Psychiatric Association, "What is Posttraumatic Stress Disorder?," https://www.psychiatry.org/patients-families/ptsd/what-is-ptsd, last visited November 24, 2017 (emphasis added).

With the applicable legal standards and PTSD definition in mind and after reviewing the challenged records, the Court finds the following with respect to each record, as identified by its Bates-label page number:

> 000274 - the very top right corner of the page should not be redacted.
>
> 000275 - only the second and third sentences of the six-sentence paragraph should be redacted.
>
> 000277 - only the second, third, and fourth sentences of the six-sentence paragraph should be redacted, and only the first sentence of the three-sentence paragraph should be redacted.
>
> 000279 - all redactions are proper.
>
> 000283 - only the second and third sentences of the nine-sentence paragraph should be redacted.

000284 - all redactions are proper.

000285 - because they are related to the unredacted information on the page, the second, third, and sixth sentences in the six-sentence paragraph should be unredacted.

000286 - because they are related to the unredacted information on the page, the third and fourth sentences of the four-sentence paragraph should be unredacted.

000287 - the last sentence in the six-sentence paragraph should be unredacted, and the first sentence of the two-sentence paragraph should be unredacted.

000288 - all redactions are proper.

000289 - all redactions are proper.

000290 - all redactions are proper.

000292 - all redactions are proper.

000293 - the last sentence of the three-sentence paragraph should be unredacted.

000294 - the first and fourth sentences of the five-sentence paragraph should be unredacted.

000295 - the first sentence of the two-sentence paragraph should be unredacted.

000296 - the fourth sentence of the six-sentence paragraph should be unredacted.

000297 - all redactions are proper.

000298 - the first and fourth sentences of the four-sentence paragraph should be unredacted.

000300 - all redactions are proper.

000303 - all redactions are proper.

000304 - the second sentence of the three-sentence paragraph should be unredacted.

000305 - all redactions are proper.

000306 - because it relates to the unredacted information on the page, the first sentence of the two-sentence paragraph should be unredacted.

000308 - the first and second sentences of the four-sentence paragraph should be

unredacted, and the first sentence of the three-sentence paragraph should be unredacted.

000619 - only the fourth sentence of the seven-sentence paragraph should be redacted.

The Plaintiff shall produce copies of records on which redactions should be removed to the Defendants on or before December 11, 2017.

Dated at Denver, Colorado, this 4th day of December, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge